UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:26-cr-00043-JAW |
| | ) | |
| DEVIN AUSTIN BISHOP | ) | |
| | ) | |

**ORDER ON MOTION TO COMPEL**

The court dismisses without prejudice a defendant's motion to compel production of a complete and unredacted copy of the U.S. Customs and Border Protection agency's policies and procedures because that document would not be relevant to the prosecution or defense of the charge of assault on a federal officer, an alleged violation of 18 U.S.C. § 111(a).

## I. BACKGROUND

On April 8, 2026, a federal grand jury for the District of Maine indicted Devin Austin Bishop for failing to report arrival and present for inspection, an alleged violation of 19 U.S.C. § 1433, and assault on a federal officer, an alleged violation of 18 U.S.C. § 111(a). *Indictment* (ECF No. 34). The case is set for trial in the November term of court with jury selection to take place on November 4, 2026 and trial to commence on November 9, 2026. *Final Pretrial Order* (ECF No. 79).

On September 2, 2026, Mr. Bishop filed a motion to compel the "training records for Customs and Border Patrol[1] Agent Christopher Cecardi concerning

---

[1] Mr. Bishop incorrectly refers to the "Customs and Border Patrol." The U.S. Border Patrol is a federal law enforcement agency under U.S. Customs and Border Protection. In general, Border Patrol agents patrol areas between ports of entry, and U.S. Customs and Border Protection agents enforce compliance with trade and immigration laws at ports of entry. *See generally* U.S. Customs & Border

operation of emergency lights on this Customs and Border Patrol vehicle, pursuit of vehicles in his capacity as a Customs and Border Patrol agent, and use of force" and "all training materials covering the same topics that were used at Customs and Border Patrol during Cecardi's employment at Customs and Border Protection." *Def.'s Mot. to Compel* (ECF No. 71) (*Def.'s Mot.*); *Id.*, Attach. 1, *Subpoena to Produce Docs., Information, or Objects in a Crim. Case* (*Subpoena*). On September 23, 2026, the Government filed its opposition to the motion to compel. *Gov't's Resp. in Opp'n to Def.'s Mot. to Compel* (ECF No. 83) (*Gov't's Opp'n*). On October 6, 2026, Mr. Bishop filed his reply. *Def.'s Reply to Gov't's Opp'n to Mot. to Compel* (ECF No. 92) (*Def.'s Reply*).

## II. POSITIONS OF THE PARTIES

### A. Devin Austin Bishop's Motion

Devin Austin Bishop's motion relates to the allegation that he assaulted a federal officer. *Def.'s Mot.* at 1. Mr. Bishop represents that evidence produced during discovery shows "that the. . . agent named as the victim in this matter failed to use his emergency lights when pursuing and stopping Defendant's vehicle." *Id.* Mr. Bishop says that he believes that "other policies and procedures regarding the use of force and pursuit may have been violated by the . . . agent." *Id.* Mr. Bishop seeks "unredacted copies of the Customs and Border Protection Policies and Procedure that were subpoenaed in this matter." *Id.*

Prot., *Border Security*, https://cbp.gov/border-security (last visited Oct. 14, 2026). The parties have used the common abbreviation CBP to refer to the U.S. Customs and Border Protection and CBPO to refer to the Customs and Border Protection Officer, which the Court accepts.

Mr. Bishop points out that a defendant's knowledge that the alleged victim was a federal officer is an element of the offense, and in his view, the agent's failure to follow official customs and policies would be relevant to determine whether an objective person would have understood him to be acting as a federal officer at the time of the alleged assault. *Id.* at 1-2. Mr. Bishop stresses that he has been willing to enter into a protective order to make certain that the records would not be shared or used outside this case, but the Government has declined to provide the records in unredacted form. *Id.* at 2.

**B. The Government's Opposition**

The Government responds that it has "already produced all responsive, non-privileged documents, and because law enforcement privilege supports the application of the limited redactions that were made, the Agency requests that the motion be denied." *Gov't's Opp'n* at 1. The Government represents that after it received Mr. Bishop's subpoena, it compiled "all responsive, non-privileged documents and produced these items to the Defendant on June 29, 2026, making limited redactions to non-relevant, personal identifying information and fields where law enforcement methods, tactics, or techniques would otherwise be revealed and the Agency's law enforcement privilege protected their disclosure." *Id.* at 2.

**C. Devin Austin Bishop's Reply**

In his reply, Mr. Bishop maintains that to demonstrate that it was reasonable for him to believe that Agent Ceccardi was not a federal agent, he requires records about how a CBPO is trained to conduct "port runner" motor vehicle stops and

arrests. *Def.'s Reply* at 1. Mr. Bishop worries that Agent Ceccardi will "fall back on his training and assert he was acting in compliance with his training as an effective safe harbor." *Id.* Mr. Bishop's defense counsel asserts that it will be "impossible. . . to meaningfully and effectively respond to such claims through cross examination of Agent Ceccardi and other potential CBP employees. . . or to identify Agent Ceccardi's failure to follow the appropriate training without actual knowledge and understanding of how CBP Agent Ceccardi was trained to conduct a motor vehicle stop and arrest of a 'port runner'". *Id.* at 1-2. Mr. Bishop also asserts that the Government waived the right to assert the law enforcement privilege when it failed to move to quash or modify his subpoena. *Id.* at 2.

## III. DISCUSSION

In *Roviaro v. United States*, 353 U.S. 53 (1957), the United States Supreme Court recognized a law enforcement privilege against the revelation of the identity of some confidential informants. *Id.* at 59. In *Roviaro*, the Supreme Court wrote that the "scope of the privilege is limited by its underlying purpose." *Id.* at 60.

In his motion, Mr. Bishop first states that "[t]he question of Defendant's knowledge that the alleged victim was a federal officer is an element of the offense." *Def.'s Mot.* at 1. He later argues that these records "are essential to [his] defense, which requires him to demonstrate that it was reasonable for him to believe that Agent Ceccardi was not in fact a federal CBP agent based on his actions and behavior on February 22, 2026, including his failure to use flashing blue emergency lights when he stopped Bishop's vehicle in the dark." *Def.'s Reply* at 1.

In *United States v. Feola*, 420 U.S. 671 (1975), the United States Supreme Court addressed this issue and ruled:

> We conclude, from all this, that in order to effectuate the congressional purpose of according maximum protection to federal officers by making prosecution for assaults upon them cognizable in the federal courts, § 111 cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer. All the statute requires is an intent to assault, not an intent to assault a federal officer. A contrary conclusion would give insufficient protection to the agent enforcing an unpopular law, and none to the agent acting under cover

*Id.* at 684. As *Feola* observed, a defendant may be prosecuted under § 111, when person being assaulted is an undercover agent, so Mr. Bishop's understanding that his knowledge that the victim was a federal officer is material is inaccurate. *See Booth v. Maryland*, 482 U.S. 496 (1987) (stating in dissent that *Feola* held that a "conviction under 18 U.S.C. § 111 for assaulting a federal officer does not require proof that the defendant knew the victim's status." *Id.* at 516-17 n.1 (J. White in dissent).

In *Feola*, the Supreme Court left open the possibility that a defendant's state of knowledge could be relevant:

> We are not to be understood as implying that the defendant's state of knowledge is never a relevant consideration under § 111. The statute does require a criminal intent, and there may well be circumstances in which ignorance of the official status of the person assaulted or resisted negates the very existence of *mens rea*. For example, where an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property. In a situation of that kind, one might be justified in exerting an element of resistance, and an honest mistake of fact would not be consistent with criminal intent.

*Id.* at 686.

The First Circuit's latest decision on § 111 is *United States v. Parrot*, 133 F.4th 46 (1st Cir. 2025) (Justice Breyer opinion). In *Parrot*, the First Circuit reiterated the *Feola* holding that "§ 111 is a general intent statute. That means that the statute requires only 'an intent to assault' and 'not an intent to assault a federal officer.'" *Id.* at 49 (quoting *Feola*, 420 U.S. at 684). "To repeat, the statute does not require specifically that 'an assailant be aware that his victim is a federal officer.'" *Id.* (quoting *Feola*, 420 U.S. at 684).

Mr. Bishop may be arguing about a narrow, potential self-defense described in *Feola*, namely that he made an honest mistake of fact that would be inconsistent with criminal intent. *See Feola*, 420 U.S. at 686. In *Parrot*, the district judge gave the following instruction on this issue:

> Mr. Parrot asserts that he acted in self defense. It is a defense to the charge if, one, the defendant did not know that [Special Agent Angell] was a federal officer; two, that the defendant reasonably believed that use of force was necessary to defend one's self against an immediate use of unlawful force; and three, that the defendant used no more force than appeared reasonably necessary in the circumstances.

*Parrot*, 133 F.4th at 50-51. The Defendant in *Parrot* did not object to this instruction, and the Court of Appeals concluded that this instruction was not plain error. *Id.* at 51.

However this issue is formulated – as a failure of the Government's burden of proof or as an affirmative defense, the Court does not understand why the CBP's policies and procedures would be relevant to whether Mr. Bishop made an honest mistake of fact and was justified in resisting. Whatever else is argued here, the Court

is dubious that Mr. Bishop would know what CBP's policies and procedures were while he was being stopped and arrested for failing to report and present for inspection. Moreover, whether the arresting officer did or did not comply with all the CBP policies and procedures, how the officer's compliance or noncompliance would have affected Mr. Bishop is unclear since there is no evidence that Mr. Bishop would have known what those policies and procedures were. Taking the most obvious issue as the prime example, Mr. Bishop is apparently claiming that the CBP Agent failed to put on his flashing lights before pulling him over and when the Agent approached his car, Mr. Bishop did not know that the person was a law enforcement officer. The focus of the issue is upon Mr. Bishop and what he knew, not upon the CBP Agent and what the CBP manual (which presumably Mr. Bishop had never read before the incident) says the Agent should have done.

The Court's preliminary conclusion is that Mr. Bishop is not entitled to an unredacted version of the CBP's policies and procedures because they are not relevant to any issue properly before the jury. The Court is dismissing Mr. Bishop's motion to compel without prejudice to allow Mr. Bishop, if he wishes to do so, to refile his motion and explain why the requested unredacted records would be relevant to the issues before the Court.

## IV. CONCLUSION

The Court DISMISSES without prejudice Defendant's Motion to Compel (ECF No. 71).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 14th day of October, 2026