UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:26-cr-00043-JAW |
| | ) | |
| DEVIN AUSTIN BISHOP | ) | |
| | ) | |

**ORDER ON MOTION IN LIMINE CONCERNING LAY OPINION TESTIMONY ABOUT WHETHER DEFENDANT WAS UNDER THE INFLUENCE OF DRUGS**

Applying Federal Rule of Evidence 701, the court rules that lay witnesses may testify that a defendant appeared to be under the influence of drugs at the time he allegedly assaulted a federal officer, assuming that the government establishes a proper foundation for that testimony.

## I. BACKGROUND

On April 8, 2026, a federal grand jury for the District of Maine indicted Devin Austin Bishop for failing to report arrival and present for inspection, an alleged violation of 19 U.S.C. § 1433, and assault on a federal officer, an alleged violation of 18 U.S.C. § 111(a). *Indictment* (ECF No. 34). The case is set for trial in the November term of court with jury selection to take place on November 4, 2026 and trial to commence on November 9, 2026. *Final Pretrial Order* (ECF No. 79).

On October 20, 2026, Mr. Bishop moved to exclude lay opinion testimony from Customs and Border Protection (CBP) Officer Christopher Ceccardi and civilian witnesses Ryan Sprague and Mark Greenlaw, specifically to prohibit them from testifying that Mr. Bishop was under the influence of drugs at the time of the events

that generated the criminal charges. *Def.'s Mot. in Limine to Exclude Lay Opinion Test. of CBP Officer Christopher Ceccardi, Ryan Sprague, and Mark Greenlaw* (ECF No. 99) (*Def.'s Mot.*). On November 2, 2026, the Government filed its opposition. *Gov't's Resp. in Opp'n to Def.'s Mot. in Limine to Exclude Lay Opinion Test.* (ECF No. 124) (*Gov't's Opp'n*).

## II. STATEMENT OF FACTS[1]

Ryan Sprague and Mark Greenlaw were motorists traveling on Route 189 (County Road) in Lubec, Maine the evening of February 22, 2026. *Def.'s Mot.* at 2. Each man stopped and physically joined a struggle between Officer Ceccardi and Mr. Bishop. *Id.* Neither Mr. Sprague nor Mr. Greenlaw had ever met or seen Mr. Bishop before that night. *Id.*

According to his later interview, Mr. Sprague recalled that when he reached the struggle, he "instantly began hitting Mr. Bishop in the head with a hammer fist and his knee", and he later "put Mr. Bishop into a choke hold." *Id.* Mr. Sprague said that he thought Mr. Bishop was on some type of drugs because of the amount of blows Mr. Bishop took to the head and continued to yell and fight. *Id.* Later, Mr. Sprague wrote that "the man he was restraining had to have been on some sort of drugs. I've punched grown men before and it was insane that the man took the knees I landed without hardly flinching." *Id.*

Mark Greenlaw is a Washington County Corrections Officer and was driving home from work when he was flagged down. *Id.* at 3. Mr. Greenlaw said that he

[1] To rule on this motion, the Court has adopted Mr. Bishop's recitation of the facts. *Def.'s Mot.* at 2-4.

helped handcuff Mr. Bishop and searched him. *Id.* Mr. Greenlaw said that during this process, Mr. Bishop kept yelling that he had been shot in the eye, that they are "poking me with needles," that someone was either with the CIA or a confidential informant, and that he was recording everything with a phone in his pocket. *Id.* Mr. Greenlaw said that based on his experience, he believed Mr. Bishop was on some kind of drugs due to his irrational behavior and thinking he was being poked with needles. *Id.*

Officer Ceccardi also characterized Mr. Bishop as appearing to be under the influence. *Id.* In his use-of-force memorandum dated February 23, 2026, he wrote that, as he attempted to handcuff Mr. Bishop, Mr. Bishop "began to act more erratic appearing to be on drugs or alcohol." *Id.* Later in a February 27, 2026 interview, Officer Ceccardi stated that after he deployed OC spray and took Mr. Bishop to the ground, "it seemed to me that he was obviously impaired in drug or alcohol sort of way, and the level of aggressiveness, because he was still trying to flail along." *Id.*

## III. THE PARTIES' POSITIONS

### A. Devin Bishop's Motion

Mr. Bishop concedes that Officer Ceccardi, Mr. Sprague, and Mr. Greenlaw may describe "what Devin said, how he acted, how he sounded and appeared, and how he responded to being struck." *Def.'s Mot.* at 4-5. But citing Federal Rule of Evidence 701, he argues that these witnesses may not "take further steps of telling the jury why Devin acted that way." *Id.* at 5. Mr. Bishop maintains that these witnesses do not have a sufficient foundation to express opinions about whether he

was under the influence of drugs at the time of the incident. *Id.* at 5-6. Mr. Bishop also contends that these witnesses are in no better position than a jury to make a judgment on this issue. *Id.* Mr. Bishop worries that the proffered testimony would lead the jury to conclude that he is "an illegal drug user" and would encourage a jury to conclude that he is a person of bad character and acted in conformity with that character, in violation of Federal Rule of Evidence 404. *Id.* at 7. He is concerned that he would effectively be required to rebut these insinuations by revealing his medical conditions, something he wishes to avoid at a public trial. *Id.* Mr. Bishop requests that the Court prohibit the Government witnesses from offering an opinion that he was under the influence of drugs on February 22, 2026 and from eliciting, referring to, or arguing any such opinion. *Id.* at 7-8.

### B. The Government's Response

The Government disagrees. *Gov't's Opp'n* at 1-3. In its opposition, the Government draws a distinction between a witness testifying that a person is on drugs and testifying that a person appeared to be on drugs. *Id.* at 2-3. The Government concedes that none of the witnesses could testify that Mr. Bishop was, in fact, on drugs, but it insists that each of the witnesses can testify that Mr. Bishop appeared to be on drugs. *Id.* The Government cites caselaw that condones the admissibility of that proposed testimony. *Id.*

## IV. DISCUSSION

Federal Rule of Evidence 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

> **(a)** rationally based on the witness's perception;
> **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> **(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701; *see also United States v. Monteiro*, __F.4th __, No. 24-2020, 2026 U.S. App. LEXIS 30839, at *14 (1st Cir. Oct. 8, 2026).

The advisory committee wrote concerning the 2000 amendment to Rule 701 that:

> The amendment is not intended to affect the "prototypical example[s] of the type of evidence contemplated by the adoption of Rule 701 relat[ing] to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences.

FED. R. EVID. 701 advisory committee's note to 2000 amendment (quoting *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196 (3d Cir. 1995)).

According to the First Circuit, one consideration is whether the jury "could independently evaluate" the witnesses' interpretations of the event. *United States v. Ortiz-Colón*, 178 F.4th 1, 19-20 (1st Cir. 2026) (quoting *United States v. Rosado-Perez*, 605 F.3d 48, 56 (1st Cir. 2010)).

Although the issue here is whether these witnesses may testify about whether they thought Mr. Bishop was under the influence of drugs, this question is a close cousin to whether a lay witness may express an opinion as to whether a person was intoxicated. As to that question, the caselaw is clear. In the words of the Second Circuit Court of Appeals, "[t]he testimony of lay witnesses has always been

admissible with regard to drunkenness." *Singletary v. Sec'y of Health, Education & Welfare*, 623 F.2d 217, 219 (2d Cir. 1980). In making this statement, the Second Circuit cited an 1856 case, *People v. Eastwood*, 14 N.Y. 562, 566 (1856), confirming that this proposition has been longstanding.

Furthermore, this proposition appears universal. *United States v. Baraloto*, 535 F. App'x 263, 275 (4th Cir. 2013) ("[A] lay witness may opine under Rule 701 that a person is under the influence of alcohol – this is within the realm of 'common experience'"); *United States v. Marshall*, 173 F.3d 1312, 1315 (11th Cir. 1999) ("[T]he opinion of a lay witness on a matter is admissible only if it is based on first-hand knowledge or observation—for example, a witness' opinion that a person with whom he had spoken was drunk, or that a car he observed was traveling in excess of a certain speed"); *United States v. Mastberg*, 503 F.2d 465, 470 (9th Cir. 1974); *United States v. Chapman*, No. 4:11-CR-22-05-HLM, 2015 U.S. Dist. LEXIS 194872, at *18 n.3 (N.D. Ga. Jan. 5, 2015); *United States v. Horn*, 185 F. Supp. 2d 530, 560 (D. Md. 2002); *Malone v. City of Silverhill*, 575 So. 2d 101, 105 (Ala. Crim. App. 1989); *State v. Lummus*, 190 Ariz. 569, 950 P.2d 1190, 1194 (Ariz. App. 1997); *State v. Ferrer*, 95 Haw. 409, 23 P.3d 744, 764 (Hawaii Ct. App. 2001); *State v. Hall*, 353 N.W.2d 37, 43 (S.D. 1984); *Beats v. State*, 2000 Tex. App. LEXIS 4542, at *5 (Tex. Crim. App. 2000) ("A lay witness, including a police officer, may express an opinion about a person's intoxication").

There is scant authority for whether the general rule for intoxication applies to drugs. *See Thomas v. United States*, No. 3:18-cv-1707(RNC), 2022 U.S. Dist.

LEXIS 56388, at *7 (D. Conn. Mar. 29, 2022) ("[T]he agents' testimony describing MV1 as 'disoriented,' 'in a little bit of a stupor,' and 'groggy,' as if 'she had taken something prior to waking up,' required no expertise"); *United States v. Robinson*, Crim. No. 16-98 (CKK), 2017 U.S. Dist. LEXIS 227459, at *3-4 (D.D.C June 30, 2017). But the Court is unable to define a principled way to differentiate between alcohol and drugs for purposes of lay opinion testimony under Rule 701.

There are some caveats. First, it's the Government's burden to demonstrate that the witnesses have a proper foundation for their testimony. *See Ortiz-Colón*, 178 F.4th at 18 ("[S]o long as proper foundation is laid, government witnesses may testify about matters within their personal knowledge and give lay opinion testimony") (emphasis supplied, internal punction omitted). To this end, the Court envisions that before it allows these witnesses to express their opinions about Mr. Bishop and whether he was under the influence of drugs, it will hold brief foundational testimony outside the presence of the jury.

Second, as the Government concedes, these witnesses will not be allowed to testify that Mr. Bishop was *on* drugs but that he *appeared* to be on drugs. *Gov't's Opp'n* at 2-3 (quoting *Robinson*, 2017 U.S. Dist. LEXIS 227460, at *3-4). Of course, Mr. Bishop is free to cross-examine each witness to explore the foundation for their lay opinions and any limitations to their conclusions.

## V. CONCLUSION

The Court GRANTS in part and DENIES in part Defendant's Motion in Limine to Exclude Lay Opinion Testimony of CBP Officer Christopher Ceccardi, Ryan Sprague, and Mark Greenlaw (ECF No. 99).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 4th day of November, 2026