UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:26-cr-00043-JAW |
| | ) | |
| DEVIN AUSTIN BISHOP | ) | |
| | ) | |

## ORDER ON RENEWED MOTION TO COMPEL

The court grants a defendant's renewed motion to compel the United States Customs and Border Protection to immediately produce a local port runner policy and trainings and any documentation regarding whether the local policy does or does not take precedence over a national directive as to who within Customs and Border Protection may engage in a pursuit, so that the defendant may challenge at trial whether the Customs and Border Protection Officer was "engaged in . . . performance of official duties," an element of the crime of assault on a federal officer, an alleged violation of 18 U.S.C. § 111(a)(1), or instead on a personal frolic.

## I. BACKGROUND

### A. Procedural Background

On April 8, 2026, a federal grand jury for the District of Maine indicted Devin Austin Bishop for failing to report arrival and present for inspection, an alleged violation of 19 U.S.C. § 1433, and assault on a federal officer, an alleged violation of 18 U.S.C. § 111(a). *Indictment* at 1-2 (ECF No. 34). The Government is alleging that Mr. Bishop approached the Lubec, Maine Port of Entry (POE) on February 22, 2026 from Canada, traveling in the inbound lane, but short of the primary inspection

booth, he turned his motor vehicle into the outbound lane used by travelers leaving the United States, and proceeded into the United States at a high rate of speed. *Gov't's Trial Br.* at 2 (ECF No. 121). The Government further alleges that when Customs and Border Protection[1] (CBP) Officer Christopher Ceccardi stopped Mr. Bishop and attempted to arrest him, Mr. Bishop resisted arrest and assaulted Officer Ceccardi. *Id.* at 3-4. The case is set for trial in the November term of court with jury selection to take place on November 4, 2026 and trial to commence on November 9, 2026. *Final Pretrial Order* (ECF No. 79).

On September 2, 2026, Mr. Bishop filed a motion to compel the "training records for (CBPO) Christopher Ceccardi concerning operation of emergency lights on this [CPB] vehicle, pursuit of vehicles in his capacity as a [CBPO], and use of force" and "all training materials covering the same topics that were used at [CPB] during Ceccardi's employment at [CBP]." *Def.'s Mot. to Compel* (ECF No. 71); *Id.*, Attach. 1, *Subpoena to Produce Docs., Information, or Objects in a Crim. Case* (*Subpoena*). On September 23, 2026, the Government filed its opposition to the motion to compel. *Gov't's Resp. in Opp'n to Def.'s Mot. to Compel* (ECF No. 83). On October 6, 2026, Mr. Bishop filed his reply. *Def.'s Reply to Gov't's Opp'n to Mot. to Compel* (ECF No. 92). On October 14, 2026, the Court issued an order on Mr. Bishop's motion to compel,

---

[1] Mr. Bishop continues to incorrectly refer to the "Customs and Border Patrol," not Customs and Border Protection. The Court pointed this out in its October 14, 2026 order. *See Order on Mot. to Compel* at 1 n.1 (ECF No. 95). The U.S. Border Patrol is a federal law enforcement agency under U.S. Customs and Border Protection. In general, Border Patrol agents patrol areas between ports of entry, and U.S. Customs and Border Protection agents enforce compliance with trade and immigration laws at ports of entry. *See generally* U.S. Customs & Border Prot., *Border Security*, https://cbp.gov/border-security (last visited Oct. 14, 2026). The parties have used the common abbreviation CBP to refer to the U.S. Customs and Border Protection and CBPO to refer to the Customs and Border Protection Officer, which the Court accepts.

dismissing the motion without prejudice. *Order on Mot. to Compel* (ECF No. 95) (*Order*).

On October 31, 2026, Mr. Bishop filed a renewed motion to compel, requesting that the Court order CBP to produce its local "port runner" policy and related training as well as written confirmation from the CBP Commissioner that the local policy overrules CBP Directive No. 4510-026B. *Def.'s Renewed Mot. to Compel* (ECF No. 111) (*Def.'s Renewed Mot.*). The Government responded on an expedited basis on November 3, 2026. *Gov't's Resp. in Opp'n to Def.'s Renewed Mot. to Compel* (ECF No. 127) (*Gov't's Renewed Opp'n*). On November 3, 2026, Mr. Bishop filed a reply. *Def.'s Reply to Gov't's Resp. in Opp'n to Renewed Mot. to Compel* (ECF No. 128) (*Def.'s Reply*).

**B. The October 14, 2026 Order**

In its October 14, 2026 order, the Court dismissed Mr. Bishop's motion to compel because he indicated he was seeking this information to question whether an objective person would have understood Officer Ceccardi to have been acting as a federal officer at the time of the alleged assault. *Order* at 3. Relying on *United States v. Feola*, 420 U.S. 671 (1975) and *United States v. Parrot*, 133 F.4th 46 (1st Cir. 2025), the Court concluded that Mr. Bishop was not entitled to this information because 18 U.S.C. § 111 is a general intent statute and requires only an intent to assault, not an intent to assault a federal officer. *Id.* at 6. The Court quoted the First Circuit in *Parrot* and the United States Supreme Court in *Feola* as stating that "the statute

does not require specifically that 'an assailant be aware that his victim is a federal officer.'" *Id.* (quoting *Parrot*, 133 F.4th at 49 (quoting *Feola*, 420 U.S. at 684).

The Court also pointed out that to make his argument, Mr. Bishop would have to demonstrate that before he was stopped on February 22, 2026, he was somehow aware of what CBP policies were such that he could demonstrate why he thought Officer Ceccardi's actions violated CBP protocol. *Order* at 6-7. The Court noted that the focus of the issue was more properly on what Mr. Bishop knew, not on what the CBP officer and manual says Officer Ceccardi should have done. *Id.*

The Court expressly dismissed his motion to compel without prejudice to allow Mr. Bishop to refile his motion and explain why the requested unredacted records would be relevant to the issues before the Court. *Id.* at 7.

## II. ADDITIONAL ASSERTED FACTS

In his renewed motion to compel, Mr. Bishop represents that he received discovery from the Government on October 30, 2026 that establishes a fact not before the Court when issuing its October 14, 2026 order: "CBP Officer Christoper Ceccardi was <u>not</u> authorized to conduct emergency vehicle pursuits per CBP Directive No. 4510-026B and the only existing policy that purports to authorize the pursuit he undertook on February 22, 2026 is the local port runner policy that CBP has refused to produce." *Def.'s Renewed Mot.* at 1 (emphasis in original). Mr. Bishop says that CBP has a policy concerning those officers who are authorized to engage in "emergency driving and vehicular pursuits" (EDVP), and Officer Ceccardi was not an authorized officer under that policy because he had not passed a CBP-approved, in-

vehicle Driver Training Program and completed an annual guidance refresher/sustainment training. *Id.* at 2-4.

Mr. Bishop quotes CBP Port Director Theodore Cummings as confirming that Officer Ceccardi had not received pursuit policy training and to engage in a pursuit, Officer Ceccardi would have had to instead follow a "follow-out policy, which is a Calais POE document." *Id.* at 4. Mr. Bishop also alleges that CBP Directive No. 4510-026B provides that "[l]ocal commands are prohibited from implementing independent pursuit policies, further modifying, or restricting the current policy without written approval from the CBP Commissioner." *Id.* (quoting *CBP Directive No. 4510-026B, "Emergency Driving and Vehicular Pursuits"* § 4.4 (Oct. 2025)) (*Directive*).

## III. THE PARTIES' POSITIONS

### A. Devin Bishop's Renewed Motion

In his renewed motion, Mr. Bishop reframed his demand for the Calais POE policy. *Id.* at 5. Although he has not abandoned his argument that the policy would be relevant for his defense of self-defense, Mr. Bishop casts his renewed request in terms of the Government's burden to prove that Officer Ceccardi "engaged in . . . the performance of official duties" as an element of § 111(a)(1). *Id.* at 5. He cites *United States v. Troy*, 583 F.3d 20 (1st Cir. 2009), for the proposition that the Government's burden on this element requires proving that the federal officer was "acting within the scope of what [he] is employed to do . . . or is engaging in a personal frolic of his own." *Id.* at 5-6 (quoting *Troy*, 583 F.3d at 24) (citation omitted). In *Troy*, Mr. Bishop

observes, the First Circuit discussed evidence in that case that corroborated that the officer had followed her training on "how to behave as a CBP Officer toward uncooperative individuals," regarding this as significant in proving the official duties element. *Id.* (quoting *Troy*, 583 F.3d at 25). Mr. Bishop argues that the Government's refusal to turn over the Calais POE policy effectively deprives him of critical information to challenge the official duties element of § 111(a)(1). *Id.* at 6-7. Mr. Bishop asks that the Court compel the Government to produce "the local port runner trainings withheld and any written confirmation by the CBP Commissioner allowing those local port runner trainings to override the Directive." *Id.* at 9.

**B. The Government's Response**

In its response, the Government argues that the requested local trainings are "not relevant to any issue properly before the Court" and, even if relevant, that relevance would not outweigh protections against such disclosure under the law enforcement privilege. *Gov't's Renewed Opp'n* at 1. The Government first observes that it has already complied with Mr. Bishop's subpoena by supplying "all responsive, non-privileged documents" on June 29, 2026, making only limited redactions. *Id.* at 2. The Government says that in doing so, it informed the Defendant that "it considered local trainings relating to port runners law enforcement privileged, in their entirety, because they reveal operational methods and techniques." *Id.* The Government concedes that the law enforcement privilege may be overcome when there is a "sufficient showing of authentic necessity." *Id.* at 3 (quoting *Gulluni v.*

*Levy*, 85 F.4th 76, 85 (1st Cir. 2023)). The Government maintains that Mr. Bishop has "failed to articulate any such interest" in his filings. *Id.*

The Government disputes whether the local trainings are relevant to an element of the assault on a federal officer charge. *Id.* It cites 19 U.S.C. § 1589a, which allows a customs officer to make a warrantless arrest. *Id.* at 4. The Government argues that the directives address the means by which CBP carries out its statutory duties but do not bear on whether the duty existed in the first instance, and that Mr. Bishop's argument conflates the two. *Id.* at 4 n.3. The Government then reiterates its view that the local trainings are not relevant to Mr. Bishop's claim of self-defense. *Id.* at 5.

**C. Devin Bishop's Reply**

In his reply, Mr. Bishop observes that in its opposition, the Government failed to mention the reason he renewed his motion, namely that "Port Director Theodore Cummings told the Government on October 22, 2026 that Officer Ceccardi 'had not received pursuit policy training' and that an officer who is not pursuit trained instead follows 'a follow-out policy, which is a Calais POE document.'" *Def.'s Reply* at 1.

Mr. Bishop also attached an email from Special Agent Jennifer Misek of the Maine FBI office to Director Cummings dated March 24, 2026 in which Special Agent Misek expressed the view that the port runner policy was likely *Brady*[2] material. *Id.* Attach. 1, *Email from Special Agent Jennifer Misek to Theodore Cummings* (Mar. 24, 2026) (*Misek Email*). Mr. Bishop points out that Director Cummings "withheld the

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

local port runner documents after he was informed by the primary agent in this case that the port runner policy 'would be Brady material.'" *Id.* at 2; *Misek Email* at 1.

Mr. Bishop next argues that the Government's own reading of the Directive demonstrates why the local runner training is discoverable, that the statutes the Government cites incorporate the Commissioner's Directive, and the CBP has not properly invoked the law enforcement privilege. *Def.'s Reply* at 2-5.

## IV. DISCUSSION

To prove the crime of assaulting a federal officer under 18 U.S.C. § 111(a), the Government must prove the following elements beyond a reasonable doubt: (1) that the defendant forcibly assaulted a federal officer, (2) that the federal officer was forcibly assaulted while engaged in the performance of official duties, (3) that the defendant did such acts intentionally, and (4) that such acts involved physical contact with the officer. *See United States v. Parrot*, 1:23-cr-00072-LEW, *Tr. of Proceedings* at 146:23-147:6 (ECF No. 102). The issue here focuses on the second element: performance of official duties.

### A. *United States v. Troy*

#### 1. The Trial Evidence

To place this issue in context, the Court turns to the 2009 First Circuit case of *United States v. Troy*. 583 F.3d. In *Troy*, David Wong Troy. "a United States citizen, entered the public lobby (the 'passenger processing area') of an inspection building operated by the [CBP] component of the Department of Homeland Security in Calais, Maine, apparently seeking to file a complaint relating to a prior interaction with CBP

officers." 583 F.3d at 22. "As Troy entered the building, CBP Officer Richard Baker, who described the look on Troy's face as 'tense,' acknowledged him by asking, 'May I help you?' Troy paused momentarily to look at Officer Baker, but, intent on speaking to a supervisor, he ignored the question and walked directly towards the supervisor's office." *Id.*

"The supervisor's office was located behind a counter, although there was no sign or other explicit indication that the office was off limits to the public. CBP Officer Martha Beckett, who was in uniform at the time, was seated near the supervisor's office." *Id.* "She did not recognize Troy, and Troy did not identify himself to her." *Id.* "As Troy approached the supervisor's door, Officer Beckett told Troy that he was not permitted to enter the supervisor's office." *Id.* "Troy continued another foot or so, stopped, turned around, and walked back through the passenger processing area towards the exit leading both to a cargo area and to United States soil." *Id.*

"In order to investigate the circumstances of Troy's attempt to enter a restricted area and to ascertain Troy's right to enter the United States, Officer Beckett followed Troy towards the exit and instructed him to stop." *Id.* "Troy ignored her and continued." *Id.* "Concerned that perhaps Troy did not speak English or otherwise did not understand her command, and in an attempt to gain his attention and redirect him, Officer Beckett reached out and touched Troy lightly on the arm." *Id.* "Troy pulled away, turned, and pushed Beckett into a nearby counter." *Id.* "Multiple CBP officers responded to Troy's action by subduing and restraining him

as he kicked and otherwise resisted." *Id.* "The next day, Troy was charged with two counts of assaulting a federal officer." *Id.*

At trial, to prove the official duties element, several CBP officers testified about "the missions and duties" of CBP officers working at the POE in Calais, including the need for security in the passenger processing area. *Id.* at 22-23. They also testified about the standard protocols CBP officers follow when dealing with individuals in that area. *Id.* at 23. They also testified about how CBP officers are expected to deal with individuals who do not comply with an officer's verbal commands, including escalating intervention from verbal commands to "soft techniques", which include physical touching. *Id.* After his conviction, Mr. Troy challenged on appeal whether the evidence was sufficient to establish the official duties element. *Id.* at 24.

**2. The Law**

In *Troy*, the First Circuit addressed for the first time "the contours of the phrase 'engaged in . . . the performance of official duties' in 18 U.S.C. § 111(a)." *Id.* The First Circuit adopted the unanimous view of other circuits in concluding that whether a federal officer is so engaged "does not turn on whether the law being enforced is constitutional or applicable to the defendant, or whether the levy order being enforced was validly obtained; rather it turns on whether the federal officer is 'acting within the scope of what [he] is employed to do . . . or is engaging in a personal frolic of his own.'" *Id.* at 24-25 (citing cases) (alteration in original). In reciting the evidence that supported the jury's finding, the First Circuit stressed the following facts: (1) the CBP officer was in uniform at the time, (2) she was at her place of work,

(3) she confronted the defendant in an effort to keep order in the passenger processing area, (4) she pursued the defendant to ascertain the reasons for his behavior and to determine whether he was admissible into the United States, (5) her escalation toward the defendant "conform[ed] precisely to the training she had received instructing her how to behave as a CBP Officer towards uncooperative individuals", and (6) her interaction with the defendant was in furtherance of the "dual missions of inspecting individuals at the border and maintaining the security of the inspection building." *Id.* at 25. The First Circuit concluded that "[i]n the face of this evidence, a rational factfinder could easily have concluded beyond a reasonable doubt that Officer Beckett's conduct fit comfortably within the scope of what she was employed to do, and that she had not crossed the line to personal frolic." *Id.*

**B. *Troy* Applied**

In his renewed motion, Mr. Bishop focuses on the phrase "acting within the scope of what [he] is employed to do . . . or is engaging in a personal frolic of his own." *See Def.'s Renewed Mot.* at 5-6. Mr. Bishop presents evidence that CBP Officer Ceccardi was not allowed under CBP policy to pursue him because Officer Ceccardi had not received the proper training and had not been certified to do so. *Id.* at 3-4. In response, the Government merely asserts that Officer Ceccardi "was authorized to follow the Defendant's vehicle upon witnessing him fail to yield for a customs inspection and, consequently, was engaged in the performance of his official duties." *Gov't's Renewed Opp'n* at 4. But the Government's assertion begs the question of whether Officer Ceccardi was so authorized, the very issue Mr. Bishop wishes to

challenge at trial. Mr. Bishop is not required to take the Government at its word and, in the Court's view, has the right to discover before trial whether the officer who pursued him was authorized to do so.

The Court does not conclude that the law enforcement privilege prevents discovery of the CBP local port runner policies, whether Officer Ceccardi was in fact authorized to pursue Mr. Bishop, and how the local and national policies interrelate. The Government acknowledges that the law enforcement privilege "may be overcome 'by a sufficient showing of authentic necessity[,]' *see Gulluni*, 85 F.4th at 85, and that "'[t]he interest of the party seeking disclosure tends to be strongest when the information in question is highly relevant, helpful, and unavailable from other sources.'" *Id.* (citing *Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63, 66 (1st Cir. 1984)). The Court concludes that Mr. Bishop has demonstrated an authentic need for the subpoenaed information and there is no evidence that it could be obtained elsewhere.[3]

### C. Relevance to Self-Defense Defense and Other Arguments

Mr. Bishop again insists that disclosure of local runner training and other documents is essential to his defense of self-defense. *Def.'s Renewed Mot.* at 7-8. The Court is skeptical, but it need not reach that argument because it is ordering

[3] With this said, the Court does not conclude that the CBP's concerns about law enforcement privilege are insignificant. In his original filing, Mr. Bishop notes that he previously "offered Counsel for the [CBP] Agency a protective order that would have provided it with assurances that the records in question would not be shared or used outside of the confines of this criminal case." *Def.'s Mot. to Compel* at 2 (ECF No. 71). The Court views Mr. Bishop's offer as a good faith effort to mitigate the impact of potential public disclosure of law enforcement internal policies and urges the parties to attempt to enter into such an agreement. However, given the impending trial, the Court is not making disclosure of these documents contingent upon the execution of a confidentiality agreement.

disclosure on a different basis. Mr. Bishop also raises other arguments in his reply, such as an asserted *Brady* violation, but again the Court does not reach those arguments because it is ordering release of the requested information in any event.

## V. CONCLUSION

The Court GRANTS Defendant's Renewed Motion to Compel (ECF No. 111). The Court ORDERS the Government to produce the local port runner policy and related trainings previously withheld and any written confirmation by the CBP Commissioner allowing those local port runner trainings to override CBP Directive No. 4510-026B.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 4th day of November, 2026